## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MOON GROUP, INC., et al.,[1]<br><br>    Debtors. | Chapter 7<br><br>Case No. 21-11140 (JKS)<br><br>(Jointly Administered) |
| DON A. BESKRONE, CHAPTER 7<br>TRUSTEE FOR MOON GROUP, INC.,<br>et al.,<br><br>    Plaintiff,<br><br>    v.<br><br>KORE CAPITAL CORPORATION,<br><br>    Defendant. | Adv. Pro. No. 21-51176 (JKS)<br><br>**Related Adv. D.I. 89, 90, 91, and 92** |

### **OPINION**

Before the Court is Defendant KORE Capital Corporation's ("Kore" or "Lender") motion for partial summary judgment (the "Motion") with respect to its counterclaim (the "Counterclaim")[2] against the Moon Entities for certain fees and expenses allegedly owed under the Loan Agreement (as defined below).  For the reasons set forth herein, summary judgment will be granted, in part, and denied, in part.

---

[1]  The Debtors in these cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Moon Group, Inc. (7484); Moon Landscaping, Inc. (3442); Moon Nurseries, Inc. (8411); Moon Site Management, Inc. (0250); Moon Wholesale, Inc. (3232); and Rickert Landscaping, Inc. (3988) (collectively, the "Moon Entities").

[2]  Adv. D.I. 89 (Motion of Kore Capital Corporation for Partial Summary Judgment).

## JURISDICTION

This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue in this District was proper as of the Petition Date (as defined below) pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be so in the context of this adversary proceeding.

## BACKGROUND

### A.    The Bankruptcy Cases

The Moon Entities (or the "Debtors") filed voluntary chapter 11 petitions on August 12, 2021 (the "Petition Date").  The cases are jointly administered.

The Court entered an order converting all of the Moon Entities' cases, except Moon Nurseries, Inc., to cases under chapter 7 effective as of February 11, 2022.[3]  Thereafter, on March 22, 2022, the case of Moon Nurseries, Inc. was converted to a case under chapter 7.[4]  Don A. Beskrone (the "Trustee") serves as chapter 7 trustee for the Debtors.[5]

### B.    Procedural History of Adversary Proceeding

The Moon Entities commenced this adversary proceeding on September 22, 2021, by filing a complaint against Kore,[6] which was later amended, alleging various causes of action related to the Loan Agreement.[7]  The Amended Complaint asserts the following claims:

---

[3] D.I. 530.

[4] D.I. 607.

[5] D.I. 541 and 548.

[6] Adv. D.I. 1.

[7] Adv. D.I. 12 (the "Amended Complaint").

(i) breach of contract, (ii) breach of implied duty of good faith and fair dealing, (iii) tortious interference with contract, (iv) common law fraud, (v) fraudulent misrepresentation, (vi) promissory estoppel, and (vii) violation of the automatic stay. Prosecution of the Amended Complaint was assumed by the Trustee upon conversion of the cases.

On November 4, 2021, Kore filed its Answer to Amended Complaint and Counterclaim[8] seeking judgment against the Moon Entities for various fees and expenses owed under the Loan Agreement.

On November 22, 2022, Kore filed the Motion[9] seeking partial summary judgment on its Counterclaim.

Kore previously filed a motion for judgment on the pleadings and, on September 30, 2022, the Court granted the motion with respect to seven of the eight counts in the Amended Complaint.[10] The Trustee filed an interlocutory appeal from the Court's First Opinion, which was granted,[11] and the District Court affirmed the First Opinion.[12] The parties agreed to hold the instant Motion in abeyance pending adjudication of the interlocutory appeal. Now that the

---

[8] Adv. D.I. 13 (Answer to Amended Complaint and Counterclaim).

[9] Adv. D.I. 89.

[10] *Beskrone v. Kore Capital Corp. (In re Moon Grp., Inc.)*, No. 21-11140 (JKS), 2022 WL 4658615, at *1 (Bankr. D. Del. Sept. 30, 2022) (the "First Opinion"), *aff'd*, 658 B.R. 92 (D. Del. 2024).

[11] *Beskrone v. Kore Capital Corp. (In re Moon Grp. Inc.)*, No. 21-11140 (JKS), 2023 WL 3848338 at *1.

[12] *Beskrone v. Kore Capital Corp., (In re Moon Grp., Inc.)*, 658 B.R. 92 (D. Del. 2024), *appeal dismissed sub nom. Beskrone v. KORE Cap. Corp.*, No. 24-1743, 2025 WL 1202541 (3d Cir. Feb. 6, 2025)

interlocutory appeal has been adjudicated, and the Motion fully briefed,[13] the Court issues this

Opinion on the Motion.

**C.    Factual Background Relevant to the Adversary Proceeding**

The Moon Entities, a centuries-old business, operated several business lines: a wholesale

tree and shrubbery nursery; a commercial landscape maintenance and site management

company; and a landscape construction business.  The Moon Entities serviced large commercial

contracts, primarily on a seasonal basis, which is a cash intensive business model.  Given this

type of work, the Moon Entities carried substantial accounts receivable, which from time to time,

resulted in cash flow shortages when awaiting remittances from customers.  The Moon Entities

required a substantial line of credit to ensure adequate cash flow.[14]

Although the Moon Entities had two secured loan facilities,[15] the cyclical cash flow needs

resulting from the seasonality of the business necessitated additional liquidity.  On May 15,

2020, the Moon Entities entered into the Revolving Credit and Security Agreement (the

"Revolving Credit Agreement") with Kore.[16]  Under the Revolving Credit Agreement, Kore

---

[13] Adv. D.I. 90 (Memorandum in Support of Motion of Kore Capital Corporation for Partial Summary Judgment); Adv. D.I. 91 (Memorandum of Law in Opposition to Motion for Partial Summary Judgment filed by Kore Capital Corporation); Adv. D.I. 92 (Reply to Chapter 7 Trustee's Memorandum of Law in Opposition to Motion for Partial Summary Judgment); and Adv. D.I. 94 (Notice of Completion of Briefing Regarding Defendant's Motion for Partial Summary Judgment).  The Trustee requested oral argument on the Motion.  Adv. D.I. 93.  This Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs, and the decisional process would not be significantly aided by oral argument.

[14] *In re Moon Grp., Inc.*, 658 B.R. at 95 (D. Del. 2024).

[15] Two lenders made loans secured by the Moon Entities' real property, inventory, and equipment: Newtek Small Business Finance, LLC extended a commercial loan in the original principal amount of $5 million pursuant to a loan and security agreement dated June 27, 2019, and North Avenue Capital, LLC extended a commercial loan in the original principal amount of $10 million pursuant to a loan and security agreement dated June 28, 2019.

[16] Adv. D.I. 12 (Amended Complaint), at Ex. 1.

4

advanced funds to the Moon Entities based on invoices issued by the Moon Entities to their

customers for services rendered. The Revolving Credit Agreement, along with all the loan

modifications thereto, are collectively referred to as the "Loan Agreement." The line of credit

under the Loan Agreement was secured by a security interest in the Moon Entities' accounts

receivable (the "Note," and together with the Loan Agreement, the "Loan Documents").[17]

After the Petition Date, on September 17, 2021, the Moon Entities paid Kore

$5,455,456.12, which represented 100% of the principal and interest due under the Loan

Agreement.[18]

Kore's Counterclaim against the Moon Entities arises from various fees and expenses

allegedly owed under the terms of the Loan Agreement.

### i.    *Diversion of Payment Fees*

The Loan Agreement provides that the Moon Entities would direct customers to make

payments directly to Kore.[19]  Similarly, under the Loan Agreement, the Moon Entities agreed to

hold any collections on their accounts receivable in trust for Kore's benefit and remit such

collections to Kore.[20]

---

[17] Kore had no security interest in the Moon Entities' real estate, inventory, or equipment prior to the Petition Date. The Moon Entities granted Kore junior replacement liens in their real property, inventory, and equipment pursuant to the Final Cash Collateral Order dated September 15, 2021.  D.I. 164.

[18] *See* D.I. 266.

[19] Affidavit of Kweski Rogers (Adv. D.I. 90) (the "Rogers Aff.") at Ex. 1 (Revolving Credit and Security Agreement) at § 2.6.

[20] Rogers Aff. (Adv. D.I. 90) at Ex. 1 (Revolving Credit and Security Agreement) at § 2.8.

On July 16, 2021, Kore issued a notice of default to the Moon Entities notifying them that

certain Events of Default had occurred under the Loan Agreement, including the Moon Entities

diversion of payments away from Kore in violation of Section 2.8 of the Loan Agreement.  That

Section states, in part:

> If any item in payment of such collections or proceeds is not
> delivered to Lender within two (2) Business Days of receipt, or any
> remittance received by electronic transfer is not transferred by wire
> to the Controlled Account within one (1) Business Day of receipt
> (or within one (1) Business Day of when such funds become good
> and cleared funds available to be wires of otherwise transferred by
> Borrowed to the Controlled Account), a **Diversion of Payment**
> Fee equal to 15% of the amount of such collection or proceeds will
> become immediately due and payable by **Borrower** (in addition to
> and not in lieu of any other fees and interest provided for in this
> Agreement).[21]

Kore alleges the following diversions of payment occurred, in the amount of

$395,508.30, in violation of the Loan Agreement:

- July 16, 2021: $1,294,828.00 from StoneMor Operating LLC ("Stonemor") to the Moon Entities (resulting in a "Diversion of Payment Fee" of $194,224.20).

- July 29, 2021: $939,499.00 from StoneMor to the Moon Entities (resulting in a Diversion of Payment Fee of $140,924.85).

- August 3, 2021: $200,000.00 from StoneMor to the Moon Entities (resulting in a Diversion of Payment Fee of $30,000.00).

- August 21, 2021: $202,395.00 (resulting in a Diversion of Payment Fee of $30,359.25).[22]

---

[21] Rogers Aff. (Adv. D.I. 90) at Ex. 1 (Revolving Credit and Security Agreement) at § 2.8 (the "Diversion of Payment Provision").

[22] Rogers Aff. (Adv. D.I. 90) at ¶ 11 (The Affidavit does not provide the payee or the Moon Entity at issue; however, the Trustee does not dispute the fact.).

### ii.    *Overadvance Fees*

Kore also asserts that it is entitled to "Overadvance Fees" under Section 2.9 of the Loan

Agreement, which states:

> If any Overadvance is not paid by the next Business Day after
> demand, Borrower shall pay (in addition to and not in lieu of any
> other fees and interest provided for in this Agreement) an
> **Overadvance Fee** in an amount equal to the higher or (a) $500 per
> day or (b) an amount equivalent to the Overadvance times the
> Default Rate from the date such Overadvance arose to and
> including the date of payment of such Overadvance (computed on
> the basis of a 360 day year and applied to actual days elapsed).[23]

Kore maintains that the Moon Entities were overadvanced for 25 days in July 2021 by more than

$500,000.00 above the maximum amount of the $4,000,000.00 line of credit,[24] resulting in

$25,000.00 in Overadvance Fees for the month.

Kore further alleges that, in August 2021, the Moon Entities were overadvanced for an

unspecified number of days by more than $500,000.00 and incurred an additional $31,000.00 in

Overadvance Fees and, in September 2021, were overadvanced for 17 days and incurred an

additional $17,000.00 in Overadvance Fees.[25]  Kore seeks a total of $73,000.00 in Overadvance

Fees.

Kore also claims that under Section 3 of the Waiver/Loan Modification Agreement, dated

June 28, 2021,[26] the Moon Entities agreed to pay $10,000.00 to Kore if they did not cure the

---

[23] Rogers Aff. (Adv. D.I. 90) at Ex. 1 (Revolving Credit and Security Agreement) at § 2.9 (the "Overadvance Provision").

[24] Rogers Aff. (Adv. D.I. 90) at ¶ 15.

[25] Rogers Aff. (Adv. D.I. 90) at ¶ 16.

[26] Section 3 of the Waiver/Loan Modification Agreement, dated June 28, 2021, states:

> Cure of Overadvance.  As a result of the Borrower's false reporting of accounts
> receivable, the Borrower is not in compliance with Section 2.9 of the Loan

overadvance by July 2, 2021; and $20,000.00 to Kore if they did not cure the overadvance by

July 9, 2021.  According to Kore, the Moon Entities did not cure the overadvances by the

applicable deadlines and, as a result, owe Kore a total of $30,000.00 in addition to the

Overadvance Fees described above.[27]

### iii.    *Field Examination Expenses*

Kore asserts that, pursuant to Section 6.17 of the Loan Agreement,[28] it is entitled to

recover $7,500.00 in expenses for its field examination of the Moon Entities' operations (the

"Field Examination Expenses").[29]

---

Agreement.  If Borrower has not cured the failure to comply with Section 2.9 of
the Loan Agreement by July 2, 2021, Borrower shall pay $10,000.00 to the
Lender.  If Borrower has not cured the failure to comply with Section 2.9 of the
Loan Agreement by July 9, 2021, Borrower shall pay $20,000.00 to the Lender.

Rogers Aff. (Adv. D.I. 90) at Ex. 1 (Waiver/Loan Modification Agreement, dated June 28, 2021) at § 3 (the
"Overadvance Cure Provision").

[27] Rogers Aff. (Adv. D.I. 90) at ¶ 18.

[28] Section 6.17 of the Loan Agreement states, in part:

Field Examinations.  Lender or any representative of agent of Lender may, at
Lender's option and at Borrower's cost and expense, conduct up to four annual
field exams in order to audit, examine and verify the Collateral, examine and
make copies of and abstracts from the records and books of account of, and visit
the Business Premises of Borrower and discuss the affairs, finances and
accounts of Borrower with any of its officers, members and directors (the "Field
Exam").  Further, Lender shall have the option to conduct such additional Field
Exams as deemed reasonably necessary by Lender at any time after and during
the continuance of an Event of Default hereunder.

Rogers Aff. (Adv. D.I. 90) at Ex. 1 (Revolving Credit and Security Agreement) at § 6.17 (the
"Field Examinations Provision").

[29] Rogers Aff. (Adv. D.I. 90) at ¶ 19 and Ex. 4.

### iv.    Termination Fee

Pursuant to Section 10.12 of the Loan Agreement,[30] Kore asserts it is entitled to recover a

termination fee (the "Termination Fee") of $30,000.00 based on Kore's termination of the Loan

Agreement, more than one year after execution of that agreement, due to the Moon Entities'

defaults thereunder in July 2021.[31]

### v.    Injunction Bond Fee

Kore asserts that it incurred injunction bond charges (the "Bond Fee") of $3,100.00 in

connection with its prepetition state court receivership action against the Moon Entities.[32]  Kore

maintains it is entitled to recover the Bond Fee under Section 10.6 of the Loan Agreement,[33]

---

[30]  Section 10.12 of the Loan Agreement states, in part:

> Termination Fee.  If (a) this Agreement or the Term hereof is terminated by
> Borrower, or (b) this Agreement or the Term hereof is terminated by Lender or
> by operation of law by reason of the occurrence of an Event of Default
> (including, without limitation, the filing of any proceeding described in Section
> 8.1(h) of this Agreement), Borrower shall pay to Lender and there shall be
> included in the Obligations, a "Termination Fee."  . . . If such termination
> occurs after the first anniversary of the Acceptance Date, the Termination Fee is
> $30,000.00.  The Termination Fee shall be in addition to all other fees and
> charges provided for in this Agreement, and shall be deemed fully earned and
> payable with or without demand and whether or not any other Obligations are
> prepaid.

Rogers Aff. (Adv. D.I. 90) at Ex. 1 (Revolving Credit and Security Agreement) at § 10.12 (the "Termination Fee
Provision").  The Loan Agreement defines "Acceptance Date" as the "date this [Loan] Agreement is executed by an
authorized representative of Lender."  Rogers Affidavit at Ex. 1 (Revolving Credit and Security Agreement) at
§ 1.1(b).  The Acceptance Date of the Loan Agreement is May 15, 2020.  See Rogers Aff. (Adv. D.I. 90) at Ex. 1
(Revolving Credit and Security Agreement) at p. 1.

[31]  Rogers Aff. (Adv. D.I. 90) at ¶ 20.

[32]  Rogers Aff. (Adv. D.I. 90) at ¶ 22.

[33]  Section 10.6 of the Loan Agreement states, in part:

> (a) Borrower agrees to pay and to reimburse Lender on written demand for all
> reasonable costs, expenses, filing fees and taxes paid or payable in connection
> with the preparation, negotiation, execution, delivery, recording, administration,
> performance, construction, interpretation, workout, restructure, collection,
> liquidation, foreclosure, enforcement and defense of this Agreement and the
> other Credit Documents, or of Lender's rights in any Collateral, including, but
> not limited to: . . . *(v) all reasonable expenses and costs heretofore and from*

### vi.    Wire Fee

Also pursuant to Section 10.6 of the Loan Agreement, Kore asserts that it incurred wire charges (the "Wire Fee" and together with the Bond Fee, the "Collection Expenses") of $40.00 in connection with the Moon Entities' defaults under the Loan Agreement.[34]

### vii.    Financial Consultant Fee

Prior to the Moon Entities bankruptcy filings, Kore retained a financial consultant, Marcher Consulting, in connection with the Moon Entities' breach of the Loan Agreement.[35] Kore incurred fees of $8,472.42 from the financial consultant and seeks recovery of those fees under Section 10.6 of the Loan Agreement.[36]

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37]   An issue is genuine if there is a "sufficient evidentiary basis" on which a reasonable factfinder could find for the non-

---

*time to time hereafter incurred by Lender during the course of up to four (4) field examinations of the Collateral and Borrower's operations for each calendar year, plus a per diem charge at the then standard rate for Lender's examiners in the field and office;* and (vi) all reasonable expenses incurred in protecting Lender's interest in the Collateral.

Rogers Aff. (Adv. D.I. 90) at Ex. 1 (Revolving Credit and Security Agreement) at § 10.6 (the "Costs and Expenses Provisions") (emphasis supplied).

[34]   Rogers Aff. (Adv. D.I. 90) at ¶ 23.

[35]   Rogers Aff. (Adv. D.I. 90) at ¶ 24.

[36]   Rogers Aff. (Adv. D.I. 90) at ¶ 24 and Ex. 5.

[37]   Fed. R. Civ. P. 56, as made applicable to this contested matter by Fed. R. Bankr. P. 9014(c) and Fed. R. Bankr. P. 7056. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

movant, and a factual dispute is material "only if it might affect the outcome of the suit under governing law."[38]

The movant bears the initial burden of proving that it is entitled to relief and to demonstrate the absence of any genuine issue of material fact.[39]  Once the movant has met its burden, the non-movant "must counter with evidence that demonstrates a genuine issue of fact."[40]  The non-movant must adduce more than a mere scintilla of evidence in its favor.[41]  It cannot simply reassert factually unsupported allegations contained in its pleadings.[42]  A material fact is one which "could alter the outcome" of the case.[43]  It is genuine when it is "triable," that is, when reasonable minds could disagree on the result.[44]

When considering a motion for summary judgment, the court must make its determination based upon the materials in the record, which may include depositions, documents, affidavits or declarations, and products of discovery.[45]  The court must view the evidence in the light most favorable to the non-movant and "draw all reasonable inferences in favor of the non-moving party."[46]  At the summary judgment stage, the Court does not "weigh

---

[38] *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

[39] *Celotex Corp. v. Catrett,* 477 U.S. at 323.

[40] *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

[41] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

[42] *Big Apple BMW, Inc.*, 974 F.2d at 1363.

[43] *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995).

[44] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[45] Fed. R. Civ. P. 56(c).

[46] *Fields v. Thompson Printing Co.*, 363 F.3d 259, 265 (3d Cir. 2004) (citation omitted); *Big Apple BMW, Inc.*, 974 F.2d at 1363 (holding that "[i]nferences should be drawn in the light most favorable to the non-moving party, and

the evidence and determine the truth of the matter;" rather, it determines "whether there is a genuine issue for trial."[47]

If a court finds that there is no genuine dispute of material fact, it may enter judgment as a matter of law, either for or against the movant, in full or in part, applying the applicable substantive law.[48] "When the evidence yields conflicting inferences, summary judgment is improper, and the action must proceed to trial."[49]

## ANALYSIS

### A. The Diversion of Payment Fees, Overadvance Fees, and Termination Fee Are Not Unenforceable Penalties.

The Trustee argues that, even assuming that the Diversion of Payment Fees, Overadvance Fees, and Termination Fee were nominally triggered, these fees are unenforceable penalties.

#### i. The Loan Agreement is Unambiguous.

Maryland law applies to the Loan Agreement.[50] The Fourth Circuit instructs that: "If the terms of the contract are clear and unambiguous, then we must afford those terms their plain and ordinary meaning; however, if the terms are vague or ambiguous, then we may consider extrinsic evidence to interpret those provisions."[51] In *Doral Bank*, the Fourth Circuit explained:

---

where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true.") (citations omitted).

[47] *Anderson*, 477 U.S. at 249.

[48] Fed. R. Civ. P. 56(a), (f).

[49] *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002) (*citing Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1087 (9th Cir. 2000)).

[50] *In re Moon Grp., Inc.*, No. 21-11140 (JKS), 2022 WL 4658615 at *6.

[51] *Providence Square Assocs., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000) (citation omitted).

12

> The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue.

> An unambiguous contract should be construed by the Court as a matter of law, without reference to extrinsic evidence. The proper interpretation of a clear and unambiguous contract is that which assigns the plain and ordinary meaning to the contract terms.[52]

Here, the Trustee, the party challenging the validity of the contract, bears the burden of proof on the issue.[53]

No party asserts, nor does the Court find, that the Loan Agreement is ambiguous. The Court next considers whether the Trustee waived his affirmative defense and whether the provisions, if nominally triggered, are unenforceable penalties.

### ii. The Trustee's Affirmative Defense is Not Waived.

Kore contends that the Trustee waived the affirmative defense (that the fees are unenforceable penalties) because he did not specifically raise the affirmative defense in the Trustee's Answer to Counterclaim with Affirmative Defenses.[54]

"Federal Rule of Civil Procedure 8(c) requires a party to raise any affirmative defenses in its initial responsive pleading. Failure to assert an affirmative defense in a responsive pleading

---

[52] *Doral Bank PR v. Fed. Home Loan Mortg. Corp.*, 477 F. App'x 31, 36 (4th Cir. 2012) (citations omitted, cleaned up).

[53] *Id.* at *1.

[54] Adv. D.I. 14.

ordinarily waives that defense."[55] "However, the Court may allow a party to raise an affirmative defense at the summary judgment stage as long as the opposing party is not prejudiced by doing so."[56] In determining prejudice, the Court considers whether the new defense would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction."[57]

> Under Rule 15(a)(2), prejudice means that the party opposing the amendment would be hindered in the preparation of its case, or would have been prevented from taking some measure in support of its position. Prejudice to the opposing party is often . . . determined by the nature of the amendment and its timing. Courts should look to the particular circumstances presented, including previous opportunities to amend and the reason for the amendment. In general, the further the case progressed before judgment was entered, the more likely it is that subsequent amendment will prejudice the defendant.
>
> A court may find undue prejudice sufficient to justify denying leave to amend if a new claim or defense would force the non-moving party to expend significant additional resources to conduct discovery and prepare for trial; it would significantly delay the resolution of the dispute; or it would prevent the plaintiff from bringing a timely action in another jurisdiction. . . . A common example of a prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant, and is offered shortly before or during trial.

---

[55] *Tidewater Fin. Co. v. Fiserv Sols., Inc.*, 192 F.R.D. 516, 523 (E.D. Va. 2000), *aff'd* 4 F. App'x 201 (4th Cir. 2001).

[56] *Oxymed, Inc. v. Lincare, Inc.*, No. 1:17-CV-349, 2019 WL 7604803, at *5 (S.D. Ohio Sept. 4, 2019) (citing *Rogers v. Internal Revenue Serv.*, 822 F.3d 854, 856-57 (6th Cir. 2016) (further citation omitted)).

[57] *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994) (citation omitted). *See also Terran Biosciences, Inc. v. Compass Pathfinder Ltd.*, No. CV ELH-22-1956, 2025 WL 1928014, at *8 (D. Md. July 11, 2025) (citations and quotations marks omitted) (holding that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.").

> An amendment is not prejudicial . . . if it merely adds an additional
> theory of recovery to the facts already pled and is offered before
> any discovery has occurred.[58]

Here, there is no doubt that the Trustee delayed raising the affirmative defense; but prejudice must go beyond mere delay.[59] Kore does not assert that it is prejudiced by the Trustee's delay in raising the affirmative defense that the fees are unenforceable penalties. Absent prejudice to Kore, the Court finds that the Trustee may raise this affirmative defense.

### iii.    *The Loan Agreement Does Not Contain Unenforceable Penalties.*

Kore argues that the Moon Entities acknowledged the enforceability of these fees in the four loan modifications and forbearance agreements entered into between the parties.[60] Kore also asserts that a challenge to the Overadvance Fees is not possible because of the releases contained in the Loan Modifications. Kore maintains that the Moon Entities contractually waived any affirmative defenses against the Overadvance Fees, Termination Fee, and Diversion of Payment Fees under the Loan Agreement.

The Loan Modifications contain the following language:

> The Borrower ratifies and confirms all of its liabilities and
> obligations under the Note, the Loan Agreement and the other
> Loan Documents and agrees that, except as expressly modified by
> this Modification, the Loan Documents continue in full force and
> effect. The Borrower agrees that this Modification shall not be
> construed as an agreement to extinguish any of the Borrower's

---

[58] *Terran Biosciences, Inc.*, No. CV ELH-22-1956, 2025 WL 1928014 at *9–10 (cleaned up; citations omitted).

[59] *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022).

[60] *See* Rogers Aff. (Adv. D.I. 90) at Ex. 1 ((i) Loan Modification Agreement dated Sept. 16, 2020 ("September Loan Modification"), at §§ 6, 8(i), 8(iv) and 9; (ii) Forbearance/Loan Modification Agreement dated Dec. 30, 2020 ("December Loan Modification"), at §§ 9, 11(i-iv) and 12; (iii) Second Loan Modification Agreement dated May 24, 2021 ("May Loan Modification"), at §§ 6, 8(i), 8(ii), 8(vi), and 9; and (iv) Waiver/Loan Modification Agreement dated June 28, 2021 ("June Loan Modification" and with the September Loan Modification, December Loan Modification and May Loan Modification, the "Loan Modifications")), at §§ 7, 9(i), 9(ii), 9(v), and 10).

> original obligations under the Loan Documents and shall not
> constitute a novation as to the Borrower's obligations under the
> Loan Documents.[61]

Under the plain language of the Loan Modifications, the Borrower (Moon Entities) ratified and

confirmed all of its liabilities and obligations under the Note and agreed that the Loan

Modifications did not extinguish any original obligations. When waiver language is clear and

unambiguous, it reaffirms the borrower's loan obligations.[62]

Additionally, "[w]hether a contract provision is a penalty or a valid liquidated damages

clause is a question of law."[63]

> In order to determine whether a sum named shall be considered
> liquidated damages or penalty, courts must look at the language of
> the contract, the intention of the parties to be gathered from all of
> its provisions, the subject of the contract and its surroundings, the
> ease or difficulty of ascertaining the damages recoverable for a
> breach, the sum designated by the parties, and from all these
> factors determine what view shall be taken of the question in good
> conscience and equity. And, where from the nature of the contract
> the damages cannot be calculated with any degree of certainty, the
> stipulated sum will usually be held to be liquidated damages,
> where they are so denominated in the instrument.[64]

"There are three essential elements of a valid and enforceable liquidated damages clause. First,

such a clause must provide clear and unambiguous terms for a certain sum. Secondly, the

---

[61] September Loan Modification at § 6; December Loan Modification at § 9, May Loan Modification at § 6; and June Loan Modification at § 7.

[62] *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 122, 25 A.3d 967, 983 (2011) (citations omitted) ("Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances."); *Ussery v. Branch Banking & Tr. Co.*, 777 S.E.2d 272, 281 (N.C. 2015) (citations omitted) ("Given that parties are generally free to waive various rights, plaintiff accepted the terms of the modification agreements, which benefitted him, in exchange for plaintiff's reaffirmation of his loan obligation and waiver of his offsets and defenses against [the Bank].").

[63] *Barrie Sch. v. Patch*, 933 A.2d 382, 388 (Md. 2007).

[64] *Baltimore Bridge Co. v. United Rys. & Elec. Co. of Baltimore*, 93 A. 420, 422 (Md. 1915) (cleaned up; citations omitted); *Barrie Sch. v. Patch*, 933 A.2d 382, 389 (Md. 2007) (citations omitted).

liquidated damages must reasonably be compensation for the damages anticipated by the breach. Thirdly, liquidated damage clauses are by their nature mandatory binding agreements before the fact which may not be altered to correspond to actual damages determined after the fact."[65]  The contractual amount of liquidated damages will only be deemed invalid where the amount agreed upon is "grossly excessive and out of proportion" to the damages that might be expected to result from a breach of contract.[66]

Each of the Loan Modifications specifically affirms and contains clear and unambiguous waivers of various defenses and counterclaims arising from the Loan Documents.[67]  Although the Trustee asserts that the liquidated damages are excessive, he has not presented any evidence that such fees were "grossly excessive and out of proportion" to the damages expected to result from a breach of contract.  The Diversion of Payment Fees, Overadvance Fees, and Termination Fee were contained in the Loan Documents and, subsequently, ratified by the Moon Entities upon entry into the Loan Modifications.  Under these facts, such fees are not unenforceable penalties.

---

[65] *Bd. of Educ. of Talbot Cnty. v. Heister*, 896 A.2d 342, 352 (Md. 2006) (cleaned up; citations omitted).

[66] *Barrie Sch.*, 933 A.2d at 390 (citations omitted).  *Brooks v. Bankson*, 445 S.E.2d 473, 479 (Va. 1994) (citation omitted) ("An agreement between the parties to a contract, fixing the amount to be paid for loss which may result from breach of the contract, will be construed as a penalty when the damage resulting from a breach of contract is susceptible of definite measurement, or where the stipulated amount would be grossly in excess of actual damages.").

[67] *Am. First Fed., Inc. v. Zaria Props., LLC*, No. 315CV00404FDWDSC, 2017 WL 2662985, at *4 (W.D.N.C. June 20, 2017), *order corrected sub nom. Am. First Fed., Inc. v. NewDominion Bank, Inc.*, No. 315CV00404FDWDSC, 2018 WL 10075602 (W.D.N.C. Aug. 13, 2018) (holding that "the plain language of the loan documents clearly and unambiguously waives all rights of offsets and counterclaims, all defenses to enforceability, and any defenses Borrowers may assert on the obligations.").

**B. Kore's Entitlement to Summary Judgment with Respect to Fees and Expenses Under the Loan Agreement.**

The Court next considers whether Kore is entitled to the fees and expenses under the terms of the Loan Agreement.

Under Maryland law, the court must look to the "four corners of the agreement"[68] and give the contract's language its "customary, ordinary, and accepted meaning."[69] "[T]he true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. The language of a contract is only ambiguous if, when viewed from this reasonable person perspective, that language is susceptible to more than one meaning."[70] As held, the Court finds that the Loan Agreement is unambiguous.

### i.    *Diversion of Payment Fees*

Section 2.8 of the Loan Agreement provides, in part: "If any items in payment of such collections or proceeds is not delivered to Lender within two (2) Business Days of receipt, or any remittance received by electronic transfer is not transferred by wire to the Controlled Account within one (1) Business Day of receipt . . . , a **Diversion of Payment Fee** equal to 15% of the amount of such collection or proceeds will become immediately due and payable by Borrower . . . ."

---

[68] *Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 670 (Md. App. 2012) (citations omitted).

[69] *Baltimore Cnty., Maryland v. Aecom Servs., Inc.*, 28 A.3d 11, 23 (Md. App. 2011) (citations omitted).

[70] *Ocean Petroleum, Co. v. Yanek*, 5 A.3d 683, 690–91 (Md. 2010) (cleaned up; citations omitted).

Kore alleges that these Diversion of Payment Fees, totaling $395,508.30, were incurred prepetition.[71] The Trustee does not contest these facts, including the amount of fees. On the record before the Court, there is no genuine issue of material fact that Kore is entitled to the Diversion of Payment Fees.

### ii.    *Termination Fee*

Section 10.12 of the Loan Agreement states: "If … (b) this Agreement or the Term hereof is terminated by the Lender or by operation of law by reason of the occurrence of an Event of Default …, Borrower shall pay to Lender, and there shall be included in the Obligations, a 'Termination Fee'… . If such termination occurs after the first anniversary of the Acceptance Date, the Termination Fee is $30,000.00." The Termination Fee shall be in addition to all other fees and charges provided for in this Agreement, … ."[72] The Termination Fee is deemed "fully earned and payable" with or without demand and whether or not any other obligations under the Loan Agreement are prepaid.[73] Other than the unenforceable penalty argument discussed above, the Trustee makes no additional arguments as to the Termination Fee. The Loan Agreement was entered into on May 15, 2020, the Moon Entities defaulted in July 2021 (more than a year after execution of the Loan Agreement),[74] therefore, pursuant to the terms of the Loan Agreement,

---

[71] Rogers Aff. (Adv. D.I. 90) at ¶ 12.

[72] Rogers Aff. (D.I. 90), Ex. 1 (Revolving Credit and Security Agreement) at §10.12.

[73] Rogers Aff. (D.I. 90), Ex. 1 (Revolving Credit and Security Agreement) at §10.12.

[74] Rogers Aff. (D.I. 90) at ¶ 20.

Kore is entitled to a Termination Fee of $30,000.00. On the record before the Court, there is no genuine issue of material fact that Kore is entitled to the Termination Fee.

### iii.    Overadvance Fees

The Trustee disputes that Kore is entitled to recover Overadvance Fees for three reasons. First, the Trustee argues that Section 2.9 of the Loan Agreement states that an Overadvance Fee is only due and payable if Kore demands repayment of an overadvance, and the same is not repaid within one business day of Kore's demand. The Trustee contends that, except for the June 28, 2021 Waiver/Loan Modification Agreement which demanded repayment of a specifically identified overadvance (which was repaid), Kore does not allege that it demanded repayment of any of the other alleged overadvances.

Second, the Trustee argues that under Section 2.9 of the Loan Agreement, an Overadvance Fee is only triggered by Moon's failure to comply with a repayment demand. The Trustee maintains that such repayment demands were not made by Kore.

Third, the Trustee claims the purported overadvances were not "overadvances" but rather advances in excess of the Line of Credit (i.e. Kore increased the Moon Entities' Line of Credit). The Trustee maintains that reading Sections 2.3 and 2.9 of the Loan Agreement together permitted Kore to make an ad hoc election to advance in excess of the Credit Limit (as defined in the Loan Agreement); whereas, if Kore inadvertently made an advance in excess of the Credit Limit as a result of an error, then Kore could demand that the Moon Entities repay that excess.

Kore did not reply to any of the above arguments made by the Trustee.

Section 2.9 of the Loan Agreement states, in part: "If any Overadvance is not paid by the next Business Day *after demand*, Borrower shall pay . . . ."[75] Payment of an overadvance is triggered by a demand. No evidence was presented that Kore made a demand upon the Moon Entities.[76] The Court concludes that this record is sufficient to create a genuine issue of material fact, and, as a result, summary judgment will be denied for the Overadvance Fees.

### iv.   *Field Examination Expenses*

The Trustee argues that Kore has failed to carry its burden to establish entitlement to the Field Examination Expenses. First, the Trustee contends that Kore is only entitled to conduct four field examinations at the Moon Entities' expense, and Kore has failed to establish that the Field Examination Expenses at issue are within that contractual limit. Second, the Trustee argues that the consultant hired by Kore only conducted a "virtual" examination of documents supplied by the Moon Entities, which cannot be considered a "field examination" as the consultant never entered the "field." Third, the Trustee asserts that the consultant's time to conduct the virtual examination was "grossly excessive" relative to the documents and information reviewed by the consultant. Fourth, the Trustee asserts that the examination was conducted by a company owned by Kore's shareholder, which presents a conflict of interest.

Kore counters that nothing in Section 6.17 requires it to hire an independent auditor or that the field examination be conducted in person.

---

[75] Rogers Aff. (Adv. D.I. 90), Ex. 1 (Resolving Credit and Security Agreement) at § 2.9 (emphasis added).

[76] *See* Rogers Aff (Adv. D.I. 90) at ¶¶ 13-18.

Section 6.17 of the Loan Agreement allows Kore, or any representative or agent of

Lender, at Lender's option and the Moon Entities' cost and expense, to conduct up to four annual

field examinations in order to audit, examine, and verify the collateral.[77]  The Loan Agreement

does not address who conducts the Field Exam (as defined in the Loan Agreement), the

qualifications of the examiner or whether the examiner must be independent, nor does it address

conflicts of interest.  The Trustee is correct that Kore has not asserted, nor provided any

evidence, regarding the number of Field Exams Kore conducted in 2021.  As a result, Kore has

not satisfied its burden on proving that the elements of Section 6.17 of the Loan Agreement have

been met with respect to the Field Exam.  The Court concludes that summary judgment on the

Field Examination Expenses is not appropriate.

> ### v.    *Collection Expenses*

The Trustee next argues that Kore is not entitled to the Collection Expenses incurred in

connection with its receivership application because Section 10.6 only permits reimbursement

for "reasonable" costs and expenses.  The Trustee contends that the Moon Entities requested a

30-days stand down to permit refinancing of the Line of Credit, which Kore refused and, instead

"engag[ed] in scorch the earth tactics, including filing a receivership application … ." The

Trustee maintains that if Kore had agreed to the request for a brief stand down, Kore would have

been repaid without incurring the Collection Expenses.  The Trustee argues that these issues

represent disputed issues of material fact.

---

[77] Rogers Aff. (Adv. D.I. 90), Ex. 1 (Resolving Credit and Security Agreement) at § 6.17.

Kore maintains that Section 10.6 of the Loan Agreement, Costs and Expenses, supports its demand for Collection Expenses and that it was justified in pursuing its rights and remedies under the Loan Agreement.[78]

Section 10.6 of the Loan Agreement states, in part, that the Moon Entities agree "to pay and to reimburse Lender "on *written demand* for all reasonable costs, expenses, filing fees and taxes paid or payable in connection with the . . . . collection . . . enforcement and defense of this Agreement and to other Credit Documents."[79]  The Rogers Affidavit establishes that Kore incurred an injunction Bond Fee of $3,100.00 in connection with a prepetition state court receivership action against the Moon Entities, in which Kore sought injunctive relief, and a wire charge of $40.00 in connection with the Moon Entities' defaults under the Loan Agreement.[80]

The Loan Agreement is unambiguous — Kore is entitled to reasonable costs.  No evidence has been presented disputing the reasonableness of the two costs.  Kore, however, did not present evidence regarding its "written demand" to the Moon Entities for the Collection Expenses it incurred in connection with the collection and enforcement under the Loan Agreement.  As a result, summary judgment is not appropriate in connection with the Collection Expenses.

---

[78] Kore seeks all fees and costs under the Loan Agreement, except its legal fees and expenses. *See* Adv. D.I. 89.

[79] Rogers Aff. (Adv. D.I. 90), Ex. 1 (Revolving Credit and Security Agreement) at § 10.6(a) (emphasis added).

[80] Rogers Aff. (Adv. D.I. 90) at ¶¶ 22-23.

## **CONCLUSION**

For the reasons set forth above, the Court will grant summary judgment, in part, and deny summary judgment, in part. The Court grants summary judgment to Kore on the Diversion of Payment Fees and the Termination Fee. Summary Judgment will be denied on the Overadvance Fees, Field Examination Expenses, and the Collection Expenses. An order will issue.

Dated: February 27, 2026

J. Kate Stickles
United States Bankruptcy Judge